FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ DEC 14 2022 ★
LONG ISLAND OFFICE

**John Drago**
**293 Medea Way**
**Central Islip, New York 11722**

December 15, 2022

The Honorable Gary R. Brown
United States District Court Judge
Eastern District of New York
100 Federal Plaza
Courtroom 940
Central Islip, NY 11722-9014

**Re: United States v. Drago**

Dear Judge Brown:

Included herewith please find my motion respectfully requesting an extension to report to prison until February 7, 2023. I am in the midst of a complicated closing to sell my personal residence, proceeds from which will go directly toward paying my ordered forfeiture amount of $253,191. It will be significantly easier for me to handle any last-minute details that may arise, are required, and are expected at the closing, if I am not incarcerated at the time.

Thank you very much for your consideration.

Respectfully,

John Drago

cc: Clerk of Court, Brenna B. Mahoney
Assistant U.S. Attorney, Burton T. Ryan, Jr.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff, | ) ) ) | |
| v. | ) | Docket No: 0207 2:18CR00394(S-1)-001(GRB) |
| JOHN DRAGO,<br>Defendant. | ) ) ) | |

**RESPONSE TO GOVERNMENT'S REPLY TO DEFENDANT'S REQUEST FOR EXTENSION**

John Drago ("Drago"), acting pro se', hereby responds to the government's contesting Drago's Motion seeking an extension of his surrender date to February 7, 2022, for the reasons that follow:

1. Drago was charged under a nine-count superseding indictment for criminal charges pertaining to his check cashing business.

2. On September 9, 2021, Drago pled guilty to charges 4 and 8 of the superseding indictment.

3. The Court sentenced Drago to a term of 48 months on October 21, 2022, and he is due to surrender January 12, 2023.

4. On or about December 7, 2022, Drago filed a motion requesting an extension of time to surrender by just under four weeks to February 7, 2023 (the "Extension Motion").

5. On or about December 13, 2022, the government filed a Letter Reply contesting Drago's Extensions Motion, correctly pointing out three adjournments of sentencing that occurred as Drago hoped to previously sell the house noted in the Extension Motion.

8. Drago, humbly and respectfully, acknowledges that it can appear that Drago had been using the house sale as a delay tactic but attaches a copy of the Contract of Sale for said referenced house indicating the serious nature of the pending sale and Drago's sincere attempt to sell the house, attached as "Exhibit "A". Proceeds from the sale will go toward paying off the forfeiture amount of $253,191, so Drago's only concern is trying to make amends by getting this house sold prior to his incarceration.

## CONCLUSION

WHEREFORE, the Court should grant this motion and enter an extension recommendation as humbly requested above.

Dated: December 15, 2022

Respectfully submitted,

John Drago
293 Medea Way
Central Islip, New York 11722

*Jointly prepared by the Real Property Section of the New York State Bar Association, the New York State Land Title Association, the Committee on Real Property Law of the Association of the Bar of the City of New York and the Committee on Real Property Law of the New York County Lawyers' Association.*

**CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT**

**WARNING:**
**NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN LANGUAGE").**

**NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION.**
This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

## Residential Contract of Sale

**Contract of Sale** made as of 20th day of **OCTOBER 2022** BETWEEN

SELLER: **John Drago**
Address: **10 Muffins Meadow Road**
**Head of the Harbor, NY 11780**
Social Security Number / Fed. I.D. No(s):

hereinafter called "Seller" and

PURCHASER: **Karen Lombardo** & SALVATORE CALIBURI
Address: **26 Morningside Avenue, Box 167**
**Jamesport, NY 11947**

PREMISES:

Social Security Number / Fed. I.D. No(s):

hereinafter called "Purchaser".

The parties hereby agree as follows:

1. Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as:

Street Address: **10 Muffins Meadow Road, Head of the Harbor, NY 11780**

Tax Map Designation: **District 0801 / Section 005.00 / Block 01.00 / Lot 015.005**

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

PERSONAL PROPERTY:

2. This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, bathroom and kitchen cabinets, mantels, door mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven, refrigerator, freezer, air conditioning equipment and installations, wall to wall carpeting and built-ins not excluded below (strike out inapplicable items).
All to the extent that presently exists in "as is" condition. FOUNTAINS, OUTDOOR IRON BENCHES EXCEPT AS OTHERWISE CONTAINED HEREIN
Excluded from this sale are furniture and household furnishings and
PER MLS # 3429828, ATTACHED HERETO

PURCHASE PRICE:

3. The purchase price is **$ 1,850,000.00**

**payable as follows:**
(a) on the signing of this contract, by Purchaser's check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Downpayment"): $ ~~370,000.00~~ 185,000.00

~~(b) by allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed:~~ $

(c) Sellers concession towards closing costs $ 1,665,000.00

(d) balance at Closing in accordance with paragraph 7: $ ~~1,480,000.00~~

EXISTING MORTGAGE:

4. ~~(Delete if inapplicable) If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:~~
~~(a) The Premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with interest at the rate of ___ percent per annum, in monthly installments of $___ which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on ___.~~

~~(b) To the extent that any required payments are made on the existing mortgage between the date hereof and Closing which reduce the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at Closing under paragraph 3(d) shall be increased by the amount of the payments of principal. Seller represents and warrants that the amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be made between the date hereof and Closing.~~
~~(c) If there is a mortgage escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser shall pay the amount in the escrow account to Seller at Closing.~~
~~(d) Seller shall deliver to Purchaser at Closing a certificate dated not more than 30 days before Closing signed by the holder of the existing mortgage, in form for recording, certifying the amount of the unpaid principal, the date to which interest has been paid and the amounts, if any, claimed to be unpaid for principal and interest, itemizing the same. Seller shall pay the fees for recording such certificate. If the holder of the existing mortgage is a bank or other institution as defined in Section 274-a of the Real Property Law ("Institutional Lender"), it may, instead of the certificate, furnish a letter signed by a duly authorized officer, employee or agent, dated not more than 30 days before Closing, containing the same information.~~
~~(e) Seller represents and warrants that (i) Seller has delivered to Purchaser true and complete copies of the existing mortgage, the note secured thereby and any extensions and modifications thereof, (ii) the existing mortgage is not now, and at the time of Closing will not be, in default, and (iii) the existing mortgage does not contain any provision that permits the holder of the mortgage to require its immediate payment in full or to change any other term thereof by reason of the sale or conveyance of the Premises.~~

PURCHASE MONEY MORTGAGE:

5. ~~(Delete if inapplicable) If there is to be a purchase money mortgage as indicated in paragraph 3(c) above:~~
~~(a) The purchase money note and mortgage shall be drawn by the attorney for Seller in the form attached or, if not, in the standard form adopted by the New York State Land Title Association. Purchaser shall pay at Closing the mortgage recording tax, recording fees and the attorney's fees in the amount of $___ for its preparation.~~

~~(b) The purchase money note and mortgage shall also provide that it is subject and subordinate to the lien of the existing mortgage and any extensions, modifications, replacements or consolidations of the existing mortgage, provided that (i) the interest rate thereof shall not be greater than ___ percent per annum and the total debt service thereunder shall not be greater than $___ per annum, and (ii) if the principal amount thereof shall exceed the amount of principal owing and unpaid on the existing mortgage at the time of placing such new mortgage or consolidated mortgage, the excess be paid to the holder of such purchase money mortgage in reduction of the principal thereof. The purchase money mortgage shall also provide that such payment to the holder thereof shall not alter or affect the regular installments, if any, of principal payable thereunder and that the holder thereof will, on demand and without charge therefor, execute, acknowledge and deliver any agreement or agreements further to effectuate such subordination.~~

**DOWNPAYMENT IN ESCROW:**

6. (a) Seller's attorney ("Escrowee") shall hold the Downpayment for Seller's account in escrow in a segregated bank account at Attorney's Escrow Account until Closing or sooner termination of this contract and shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall (not) (Delete if inapplicable) hold the Downpayment in an interest-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, nonappealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that, although Escrowee is holding the Downpayment for Seller's account, for all other purposes Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally agree to defend, indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

**ACCEPTABLE FUNDS:**

7. All money payable under this contract, unless otherwise specified, shall be paid by:

(a) Cash, but not over $1,000.00;

(b) Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon not less than 3 business days notice to Purchaser;

(c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $500.00 ; and

(d) As otherwise agreed to in writing by Seller or Seller's attorney.

**MORTGAGE CONTINGENCY:**

8. (Delete if inapplicable) The obligations of Purchaser hereunder are conditioned upon issuance on or before **SEE RIDER ATTACHED HERETO** . ~~(the "Commitment Date") of a written commitment from any Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of ____ or such lesser sum as Purchaser shall be willing to accept, at the prevailing fixed rate of interest not to exceed ____ or initial adjustable rate of interest not to exceed ____ for a term of at least ____ years and on other customary commitment terms, whether or not conditional upon any factors other than an appraisal satisfactory to the Institutional Lender. Purchaser shall (a) make prompt application to an Institutional Lender for such mortgage loan, (b) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (c) pay all fees, points and charges required in connection with such application and loan, (d) pursue such application with diligence, (e) cooperate in good faith with such Institutional Lender to obtain such commitment and (f) promptly give Notice to Seller of the name and address of each Institutional Lender to which Purchaser has made such application. Purchaser shall comply with all requirements of such commitment (or of any other commitment accepted by Purchaser) and shall furnish Seller with a copy thereof promptly after receipt thereof. If such commitment is not issued on or before the Commitment Date, then, unless Purchaser has accepted a commitment that does not comply with the requirements set forth above, Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, in which case this contract shall be deemed cancelled and thereafter neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 27. If Purchaser fails to give notice of cancellation or if Purchaser shall accept a commitment that does not comply with the terms set forth above, then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph.~~

**PERMITTED EXCEPTIONS:**

9. The Premises are sold and shall be conveyed subject to: *[illegible] title not insured [illegible]*

(a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use;

(b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;

(c) Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;

(d) Real estate taxes that are a lien, but are not yet due and payable; and

(e) The other matters, if any, including a survey exception, set forth in a Rider attached.

*of Closing*

**GOVERNMENTAL VIOLATIONS AND ORDERS:**

10. (a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date hereof by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.

~~(b) (Delete if inapplicable) All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing.~~

11. (a) Seller represents and warrants to Purchaser that:

(i) The Premises abut or have a right of access to a public road;

(ii) Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;

(iii) Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");

(iv) The Premises are not affected by any exemptions or abatements of taxes; and

(v) Seller has been known by no other name for the past ten years, except

(b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.

(c) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

**GOVERNMENTAL VIOLATIONS AND ORDERS:**

12. Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16(f)), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

13. Seller shall give and Purchaser shall accept such title as any reputable title company *of Purchaser's choosing* shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract.

14. (a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a BARGAIN AND SALE DEED WITH COVENANTS AGAINST GRANTOR'S ACTS in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.

(b) If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (ii) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.

15. Closing shall take place at the office of DANIEL L. GOBETZ, ESQ. 2 Brookside Drive, Suite 120, Smithtown, New York 11787 on or about December 18, 2022, or upon reasonable notice (by telephone or otherwise) by Purchaser, at the office of Purchaser's Lending Institution in the county where the premises is located. *Neither party may declare time is of the essence within 30 days of the on or about date.*

16. This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:

(a) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.

(b) The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a ONE family dwelling at the date of Closing.

(c) The delivery by Seller to Purchaser of a duly executed and sworn affidavit (in form prescribed by law) claiming exemption of the sale contemplated hereby, if such be the case, under Article 31-B of the Tax Law of the State of New York and the Regulations promulgated thereunder, as the same may be amended from time to time (collectively the "Gains Tax Law"); or if such sale shall not be exempt under the Gains Tax Law, Seller and Purchaser agree to comply in a timely manner with the requirements of the Gains Tax Law and, at Closing, Seller shall deliver to Purchaser (i) an official return showing no tax due, or (ii) an official return accompanied by a certified or official bank check drawn on a New York State banking institution payable to the order of the New York State Department of Taxation and Finance in the amount of the tax shown to be due thereon. Seller shall (x) pay promptly any additional tax that may become due under the Gains Tax Law, together with interest and penalties thereon, if any, which may be assessed or become due after Closing, and/or execute any other documents that may be required in respect thereof, and (y) indemnify, defend and save Purchaser harmless from and against any of the foregoing and any damage, liability, cost or expense (including reasonable attorneys' fees) which may be suffered or incurred by Purchaser by reason of the nonpayment thereof. The provisions of this subparagraph (c) shall survive Closing.

(d) The delivery by Seller to Purchaser of a certification stating that Seller is not a foreign person, which certification shall be in the form then required by FIRPTA. If Seller fails to deliver the aforesaid certification or if Purchaser is not entitled under FIRPTA to rely on such certification, Purchaser shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

(e) The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises. including pool, pool equipment, central AC, IGS

(f) All plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems, equipment and machinery in the building(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing. if any

(g) If the Premises are a one or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices and carbon monoxide detector.

(h) The delivery by the parties of any other affidavits required as a condition of recording the deed.

17. At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

18. (a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing:

(i) taxes, water charges and sewer rents, on the basis of the LIEN ~~fiscal~~ period for which assessed; (ii) fuel; ~~(iii) interest on the existing mortgage; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (v) vault charges; (vi) rents as and when collected.~~

(b) If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.

(c) If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.

(d) If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.

(e) Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

19. Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less than five business days after Closing, provided that official bills therefor computed to said date are produced at Closing.

20. If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear of such matters. Upon notice (by telephone or otherwise), given not less than 3 business days before Closing, Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

21. (a) Purchaser shall order an examination of title in respect of the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.

(b) (i) If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other than those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.

(c) If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser and, unless cancelled as a result of Purchaser's default or pursuant to paragraph 8, to reimburse Purchaser for the net cost of examination of title, including any appropriate additional charges related thereto, and the net cost, if actually paid or incurred by Purchaser, for updating the existing survey of the Premises or of a new survey, and (ii) the obligations under paragraph 27 shall survive the termination of this contract.

22. If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

23. (a) If Purchaser willfully & materially defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

24. All money paid on account of this contract, and the reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges, are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

25. Any notice or other communication ("Notice") shall be in writing and either (a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or E-MAIL

(b) delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered.

26. This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.

27. Seller and Purchaser each represents and warrants to the other that it has not dealt with any other broker except Berkshire Hathaway and K Testa Real Estate ("Broker") and Seller and/or Purchaser shall pay Broker any commission earned pursuant to a separate agreement between Seller and/or Purchaser and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorneys' fees, arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.

28. (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(b) Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

(c) Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

(d) The captions in this contract are for convenience of reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.

(e) This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This subparagraph shall survive Closing.

(g) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

(h) This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.

IN WITNESS WHEREOF, this contract has been duly executed by the parties hereto.

Seller: John Drago

Purchaser: Karen Lombardo

Seller:

Purchaser: SALVATORE CA[illegible]GORI

Attorney for Seller: DANIEL L. GOBETZ, ESQ.

Attorney for Purchaser: Mark Goldsmith, Esq.

Address: 2 Brookside Drive, Suite 120
Smithtown, New York 11787

Address: 969 Jericho Turnpike
St. James, NY 11780

Tel.: 631.584.4500 Email dan@gobetzlaw.com

Tel.: 631.360.0400 Email maryl@mglattorneys.com

Daniel L. Gobetz, Esq. *Escrowee*

Receipt of the Downpayment is acknowledged and the undersigned agrees to act in accordance with the provisions of paragraph 6 above.

## CONTRACT OF SALE

Title No.

DRAGO TO LOMBARDO

STANDARD FORM OF NEW YORK BOARD OF TITLE UNDERWRITERS

Distributed by
Commonwealth
A LandAmerica Company

COMMONWEALTH LAND TITLE INSURANCE COMPANY

**RIDER TO CONTRACT FOR SALE**

**SELLER:** **John Drago**

**PURCHASER:** **Karen Lombardo**

**PREMISES:** **10 Muffins Meadow Road, Head of the Harbor, NY 11780**

**DATE:** **October 28, 2022**

******************************************************************************

Notwithstanding any terms of the printed contract of sale to the contrary, it is understood and agreed between the parties as follows:

29. The premises are sold and conveyed subject to the following:
(a) Building and zoning regulations and ordinances of the city, town or village in which the premises lie which are not violated by existing structures; or their present use
(b) Any state of facts an accurate survey of the premises may show provided same does not render title unmarketable that do not create an out of possession exception
(c) Covenants and restrictions presently of record, utility easements and agreements on of record, if any, and which may be in full force and effect on the date of delivery of the deed title. provided same are not violated by existing structures or the present manner of use and occupancy thereof.

30. The down payment of ~~$370,000.00~~ $185,000.00 referred to in paragraph "3" of this contract shall be deemed to be made to Seller by payment thereof to Daniel L. Gobetz, Esq. whose offices are at 2 Brooksite Drive, Suite 120, Smithtown, New York 11787, Attorney for the Seller, to be held by said attorney in escrow until the earlier of (i) the delivery of the deed hereunder of, (ii) such time as the Purchaser may be entitled to a refund thereof, at which time said escrowee shall remit such downpayment to the party then entitled thereto. Said escrowee shall act, with respect to such payment, as a stakeholder only and without compensation and shall not be liable for the payment of any interest of Court costs in any action that may be brought to recover the moneys held in escrow, or any part thereof, unless such escrowee shall fail or refuse to pay over such moneys pursuant to a Judgment, Order of Decree that shall be final beyond possibility of appeal. If the Purchaser shall be entitled to a refund of said deposit, Seller will pay or cause such refund to be made to the Purchaser.

31. It is agreed that any escrowee deposits, including the downpayment paid hereunder, for any purpose to the attorney for the Seller, are being made for the accommodation of the parties hereto. In the event any litigation shall arise between the parties to this agreement concerning any such escrow deposit, then the parties hereto do severally and jointly agree to indemnify and save harmless the said escrowee from the payment of any costs or other expenses that might be involved in said litigation, and this agreement shall survive the delivery of the deed hereunder.

32. If Seller shall be unable to convey title in accordance with the terms of this agreement, the sole obligation of the Seller will be to refund the Purchaser's downpayment made under this contract and to reimburse the Purchaser for the cost of title examination whereupon the Purchaser shall have no further claim or lien against the Seller or the premises herein described. The Seller shall not be required to bring any action or proceeding or otherwise incur any expense in excess of $5,000.00 to render the title to the premises marketable. The Purchaser may, nevertheless, accept such title as the Seller may be able to convey, without reduction of the purchase price or any other credit or allowance against the same and without any other liability on the part of the Seller. The term "cost of title examination" is defined, for the purpose of this agreement, as the expense actually incurred by the Purchaser for title examination and survey. In no event, however, to exceed the net amount which would be charged for title examination of the premises described herein without the issuance of a policy by a title company doing business in the County in which the property is located.

33. The acceptance of a deed by the Purchasers shall be deemed to be a full performance and discharge of every agreement and obligation on the part of the Seller to be performed pursuant to the provisions of this agreement except only those, if any, which are herein specifically stated to survive the delivery of the deed.

34. At their own expense, Purchaser shall have ten (10) days from the date of this contract to have the premises inspected for termites. If such inspection shall reveal a termite infestation or damage, the Purchaser shall notify Seller's attorney in writing, specifying the areas affected. The Seller, at their own cost and expense, may provide the necessary treatment* for, if they decide not to do so, either party hereto may cancel this contract. Upon cancellation of the contract, the Seller will refund the payment made by the Purchaser and thereafter neither party shall have any liability to the other. Purchaser may, nevertheless, close title subject to existing infestation.

35. Seller represents that the plumbing, including pool, pool equipment, central A/C, IGS, heating and electrical systems and appliances shall be in working order at the time of closing or possession, whichever is later, and the roof shall be free of leaks at the time of closing or possession, whichever is later. It is agreed that this representation shall be withdrawn at the time of closing and shall not survive the delivery of this deed or the granting of possession, whichever is later. if any

36. This contract cannot be assigned without the prior written consent of the Seller.

37. The Purchaser represents, warrants and declares that they have been afforded an opportunity to make an exterior and interior inspection of the premises which are the subject of this contract, that they either have made such inspection of the said premises, or caused such inspection of the said premises. The Purchaser agrees that the premises are being sold "AS IS" without representations, statements or warranties, written or oral, expressed or implied, and agree at the time of closing they will repair subject only to changes as may occur between the date of this Contract and closing of title by reason of ordinary wear and tear, except as otherwise contained herein

38. This agreement constitutes the entire contract between the parties hereto and the Seller is not liable or bound in any manner by expressed or implied warranties, guarantees, promises, statements, representations or information except those expressly set forth.

* and provide a one year warranty against re-infestation

39. Mortgage Commitment Contingency: *(Delete paragraph if inapplicable.)* (a) The obligation of Purchaser to purchase under this contract is conditioned upon issuance, on or before ~~30~~ 45 days after a fully executed copy of this contract is given to Purchaser or Purchaser's attorney in the manner set forth in paragraph 25 or subparagraph 39(c) (the "Commitment Date"), of a written commitment from an Institutional pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of **$650,000.00** for a term of at least thirty (30) years (or such lesser sum or shorter term as Purchaser shall be willing to accept) at the prevailing fixed or adjustable rate of interest and on other customary commitment terms (the "Commitment"). To the extent a Commitment is conditioned on the sale of Purchaser's current home, payment of any outstanding debt, no material adverse change in Purchaser's financial condition or any other customary conditions, Purchaser accepts the risk that such conditions may not be met; however, a commitment conditioned on the Institutional Lender's approval of an appraisal shall not be deemed a "Commitment" hereunder until an appraisal is approved (and it does not occur before the Commitment Date, Purchaser may cancel unless the Commitment Date is extended). Purchaser's obligations hereunder are conditioned only on issuance of a Commitment. Once a Commitment is issued, Purchaser is bound under this contract even if the lender fails or refuses to fund the loan for any reason.

(b) Purchaser shall (i) make prompt application to one or, at Purchaser's election, more than one Institutional Lender for such mortgage loan, (ii) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (iii) pay all fees, points and charges required in connection with such application and loan, (iv) pursue such application with diligence, and (v) cooperate in good faith with such Institutional Lender(s) to obtain a Commitment. Purchaser shall accept a Commitment meeting the terms set forth in this paragraph and shall comply with all requirements of such Commitment (or any other commitment accepted by Purchaser). Purchaser shall furnish Seller with a copy of the Commitment promptly after receipt thereof.

(c) (*Delete this subparagraph if inapplicable*) Prompt submission by Purchaser of an application to a mortgage broker registered pursuant to Article 12-D of the New York Banking Law ("Mortgage Broker") shall constitute full compliance with the terms and conditions set forth in this paragraph), provided that such Mortgage Broker promptly submits such application to such Institutional Lender(s). Purchaser shall cooperate in good faith with such Mortgage Broker to obtain a Commitment from Institutional Lender(s).

(d) If all Institutional Lenders to who applications were made deny such applications in writing prior to the Commitment Date, Purchaser may cancel this contract by giving Notice thereof to Seller, with a copy of such denials, provided that Purchaser has complied with all its obligations under this paragraph.

(e) If no Commitment is issued by an Institutional Lender on or before the Commitment Date, then, unless Purchaser has accepted a written commitment from an Institutional lender that does not conform to the terms set forth in this paragraph, Purchaser may cancel this contract by giving Notice thereof to Seller, within 5 business days after the Commitment Date, provided that such Notice includes the name and address of the Institutional Lender(s) to whom application was made and that the Purchaser has complied with all its obligations under this paragraph.

(f) If this contract is canceled by Purchaser pursuant to this paragraph, neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of

this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 21.

(g) ~~If Purchaser fails to give timely Notice of Cancellation or~~ if Purchaser accepts a written commitment from an Institutional Lender that does not conform to the terms set forth in this paragraph, then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph.

(h) If Seller has not received a copy of a commitment from an Institutional Lender accepted by Purchaser by the Commitment Date, Seller may cancel this contract by giving Notice to Purchaser within 5 business days after the Commitment Date, which cancellation shall become effective unless Purchaser delivers a copy of such commitment to Seller within 10 business days after the Commitment Date. After such cancellation neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser (provided Purchaser has complied with all its obligations under this) and except as set forth in paragraph 21.

(i) For purposes of this contract, the term "Institutional Lender" shall mean any bank, savings bank, private banker, trust company, savings and loan association, credit union or similar banking institution whether organized under the laws of this state, the United States or any other state; foreign banking corporation licensed by the Superintendent of Banks of New York or regulated by the Comptroller of the Currency to transact business in New York State; insurance company duly organized or licensed to do business in New York State; mortgage banker licensed pursuant to Article 12-D of the Banking Law; and any instrumentality created by the United States or any state with the power to make mortgage loans.

(j) Purchaser shall be deemed to have been given a fully executed copy of this contract on the third business day following the date of ordinary mailing, postage prepaid.

(k) In the event the house does not appraise for the full purchase price amount the buyer agrees to pay the difference by certified funds to the seller.

40. Purchaser represents that they have *or will have prior to the closing date herein* sufficient liquid assets to cover the balance of the purchase price over the mortgage and closing costs, if any. The Purchaser also represents that they have sufficient income to support the payments necessary to obtain the mortgage contemplated herein.

41. ~~Seller shall, however, have the option of remaining in possession of the premises for a~~ period not to exceed five (5) days after the closing of title, provided that all adjustment shall be made as of the date of actual possession (anything herein to the contrary notwithstanding), and further provided that the Seller shall deposit with their attorney, in escrow, the sum of One Thousand ($1,000.00) Dollars to insure vacancy on or before such fifth day, should the Seller shall fail to vacate. In the event that Seller exceeds five (5) days, for each day beyond the five (5) days, Seller will reimburse Purchaser the sum of One Hundred and Fifty ($150.00) Dollars a day. No landlord and tenant relationship shall be created by such payment and the Purchaser may have the right to exercise all legal and equitable remedies to remove the Seller from the premises and obtaining possession. The agreement shall survive the closing of title without ~~further written agreement at closing.~~

42. Notwithstanding the provisions of Paragraph 16(f) of the printed form of contract wherein Seller agrees that all appliances shall be in working order at the time of closing of title, it is agreed that Seller's obligation to repair/replace same shall not exceed ~~Two Hundred Fifty and 00/100 ($250.00) Dollars~~ per appliance. This representation shall not survive the closing of title. $1,500.00

43. Seller represents that the premises is a legal one (1) family dwelling covered by a Certificate of Occupancy as said premises are presently constructed. At or prior to closing title, Seller shall deliver to Purchaser the Certificate(s) of Occupancy and/or Certificate(s) of Completion or Letter of Preexisting Use for the premises as it presently exists, except for any decks, pools, sheds, bay window, finished basements, garage conversions, and patio covers or awnings (which may be removed, without allowance or abatement of purchase price, if same is an impediment to closing). In no event, however, shall Seller be required to bring variance or change of zone proceedings, if same is necessary to secure any of said certificates or letter. In the event that same cannot be obtained by the Sellers without bringing said proceedings, then Seller shall have option to cancel this Contract and to return the monies deposited upon the signing thereof to the Purchasers* and, upon collection thereof, neither party shall have any further rights as against the other. Purchaser, however, shall have the right to elect to proceed with the purchase regardless of the production of said certificates. In the event a certificate of occupancy and/or certificate of completion or letter of pre-existing use for premises is not available, the purchaser shall provide the seller's attorney with a current survey at least ten (10) days prior to the date set forth in the contract for closing and seller shall be given a reasonable adjournment of the closing date in order to obtain such certificate.

* and cost of survey, if any

44. In the event there are currently solar panels installed on the house the buyer(s) agree to take the premises in its existing condition and will assume the responsibility of the monthly payments for the duration of the contract under its current terms and conditions and/or Lease Transfer Agreement. If the title company requires a UCC Financing Statement Amendment (Form UCC3) to be filed prior to closing to clear any existing liens subject to the solar panels, the buyer agrees to sign any documents required by the solar panel company to effectuate said transfer of the existing contract into the buyer's name.

45. In the event that the lender requires any improvements, repairs, corrections or modification to the premises as a condition of issuing a mortgage commitment, nothing herein shall obligate the Seller to incur any expenses, make any repairs, corrections or modifications to the premises or expend any money in furtherance thereof. However, the Seller will allow the Purchaser access to the property to effectuate said repairs, corrections or modifications, if required by the lender.

46. LEAD BASED PAINT INSPECTION. This Contract is contingent upon a risk assessment or inspection of the premises for the presence of lead-based paint and/or lead-based paint hazards at the purchaser's expense until 9:00 P.M. on the tenth (10th) calendar day after purchaser's attorneys' receipt of a fully executed copy of this Contract. (Intact lead-based paint that is in good condition is not necessarily a hazard. See the EPA pamphlet "Protect your Family From Lead In Your Home" for more information. This contingency will terminate at the above pre-determined deadline unless the purchaser delivers to seller's attorney a written contract

addendum listing the specific existing deficiencies and corrections needed, together with a copy of the inspection and/or risk assessment report. The Seller may, at Seller's option, within ten (10) days after delivery of the addendum and report, elect in writing whether to correct the condition(s) prior to closing. If the Seller will correct the condition(s), the Seller shall furnish the Purchaser with certification from a risk assessor or inspector demonstrating the condition(s) has (have) been remedied before the date of closing. If Seller does not elect to correct the condition(s) or if the Seller makes a counter-offer, the Purchaser shall have ten (10) days to respond to the counter-offer or remove this contingency and take the property in "as is" condition or this contract shall become void. The Purchaser may remove this contingency at any time without cause.

47. RESIDENTIAL DISCLOSURE STATEMENT. Unless Seller is otherwise exempt, Seller will give Purchaser a credit of $500.00 in lieu of completing the Residential Disclosure Statement.

48. ~~TRAVEL FEE. If seller agrees to a closing location outside of Suffolk County, the following travel fee shall be paid to the Seller's attorney, by the Purchasers at closing:~~

~~Nassau County.............................. $150.00~~
~~Queens County.............................. $395.00~~
~~Kings County................................ $395.00~~

*Closing to occur in Nassau or Suffolk County.*

49. In the event of any conflict between the contract of sale, and this rider conflicting provision(s) of this rider shall govern.

50. In the event this Contract is subject to the purchaser obtaining an F.H.A. mortgage, it is understood and agreed that Seller shall not be obligated to perform or pay for any compliance work, repairs or alterations required by the F.H.A. or any other lending institution.

51. In the event there is an "out of possession" claim, Seller shall use reasonable efforts to remedy it. This shall include Seller's right to obtain a "Fence Affidavit" *if acceptable to Title* or remove any offending structures. If there shall be a cost in excess of $500.00 to remove such objection, Seller may cancel this Contract subject to Purchaser's right to accept title to the premises with such objection without reduction of the purchase price. In the event of cancellation, the sole liability of the Seller will be to refund the Purchaser the amount paid on contract and upon such refund, this contract shall be deemed null and void.

52. In the event there is a tax grievance pending at the time of closing, the Purchaser agrees to accept an assignment from Seller of any contract for grievance services. Purchaser shall be responsible for payment of any fees, charges, expenses and costs of such grievance services and will execute such documents as may be required to implement same. Purchaser shall receive any refund resulting from a successful tax grievance, pro-rated, as necessary, to the date of closing. This provision shall survive closing.

**53. Purchasers hereby represent that they have sufficient assets to offset any appraisal lower than the purchase price. In the event of a low appraisal, Purchasers agree to purchase at the contract sales price.**

**54. Electronic Signatures (a) This Agreement may be executed in several counterparts, each of which shall be deemed an original and all of which shall constitute one and the same instrument, and shall become effective when counterparts have been signed by each of the Parties and delivered to the other Parties; it being understood that all Parties need not sign the same counterparts. (b) The exchange of copies of this Agreement and of signature pages by facsimile transmission (whether directly from one facsimile device to another by means of a dial-up connection or whether mediated by the worldwide web), by electronic mail in "portable document format" (".pdf") form, or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, or by combination of such means, shall constitute effective execution and delivery of this Agreement as to the Parties and may be used in lieu of the original Agreement for all purposes. Signatures of the Parties transmitted by facsimile shall be deemed to be their original signatures for all purposes.**

____________________________
**Seller: John Drago**

____________________________
**Purchaser: Karen Lombardo**

____________________________
PURCHASER: SALVATORE CALIGURI

## Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards

### Lead Warning Statement

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

### Seller's Disclosure

(a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

(i) ______ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

______________________________________________

(ii) ______ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available to the seller (check (i) or (ii) below):

(i) ______ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

______________________________________________

(ii) ______ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

### Purchaser's Acknowledgment (initial)

(c) [initials] Purchaser has received copies of all information listed above.

(d) [initials] Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home.*

(e) Purchaser has (check (i) or (ii) below):

(i) ______ received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or

(ii) ______ waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

### Agent's Acknowledgment (initial)

(f) ______ Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

### Certification of Accuracy

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| [signature] | | [signature] | 10/26/22 |
|---|---|---|---|
| Seller | Date | Seller | Date |
| [signature] | 10/26/22 | | |
| Purchaser | Date | Purchaser | Date |
| Agent | Date | Agent | Date |

**10 Muffins Meadow Road, Head Of The Harbor, NY 11780** **List Price: $1,849,999**

**ML#: 3429828** Residential 1 Family, Det **LSC:** New

**Sec/Area:**
**Devel:**
**Hamlet:**
**Village:**
**Taxes:** $32,996.97 **Vill Tax:** $4,515.45
**Total Taxes:** $37,512.42
**Dis:** 801 **Sec:** 5
**Block:** 1 **Lot:** 5
**Appx Yr Built:** 1865
**Yr Built Exception:**

**Style:** Estate
**Rooms:** 15
**Br:** 10
**Baths Full:** 5 **Half:** 2
**Lot Size:** 3.75
**Lot Sqft:** 163350
**Zoning:**
**Adult Comm:** N
**Year Renovated:**
**New Constr:** N

**School District:** Smithtown **Elementary School:**
**Jr High School:** Nesaquake Middle School **High School:** Smithtown High School-East
**Cross Street:** Hitherbrook Road **Walk Score®:** 8
**Directions:** Hitherbrook Road to Muffins Meadow Rd
**Location Features:**
**PUD:**

**Agent Only Remarks:** Submit All Offers In Writing w/Pre-Approval Letter &/Or POF. No Offer Considered Accepted Till Formal Contract Of Sale Is Fully Executed & Delivered. Compensation Offered To M.L.S Participants Only & due only upon closing. All Info Including But Not Limited To Taxes, Lot Size, Age Of Property Aren't Guaranteed Nor Verified & Should Be Independently Verified.

**Public Remarks:** Sitting High Above the Rest on almost 4 acres is this Elegant Historical Estate that leaves nothing to the imagination. Witness the attention to detail when you enter the Striking Foyer, Grandiose Formal Dining and multiple Sitting Areas with 9 Wood Burning Fireplaces, restored to its Charming Era. The Magnificent Updated Kitchen is perfect for entertaining any affair and the Oversized Living Room leads to the outdoor patio. Completing this Palatial Home are 10 Bedrooms and 5 Full and 2 Half Baths. Outdoors, you'll find Exquisite Landscape with multiple Fountains, Gardens and a Pond/Waterfall.

## *Property Characteristics*

### *Interior Features*

**Interior Features:** Cathedral/Vaulted/High Ceiling, Den/Family Room, Eat in Kitchen, Formal Dining Room, Foyer, Home Office, Lr/Dr, Master Bath, Powder Room, Storage, Walk In Closet, Walk Out Basement
**Total Rooms Finished:** 15
**Appearance:**
**Appx Int Sqft:**
**Basement:** Full
**# Kitchens:** 1
**Attic:** Partial
**Fireplaces:** 9

### *Exteriors Features*

**Exterior Features:** Patio
**Parking:** 2 Car Detached
**Driveway:** Pvt
**Construction:** Brick
**Siding Description:**
**Street Type:**
**Other Structures:**
**View:**
**Lot Exposure:**
**Building Size:**
**# Levels:**

### *Utilities*

**A/C:** Central
**Heating Fuel:** Oil
**Heating Type:** Steam
**Heat Zones:** 1
**Sep HW Heater:** Y
**Hotwater:** Fuel Oil Stand Alone
**# of Heat Units:**
**# of Electric Meters:**
**# of Gas Meters:**
**Garbage Removal:**
**Water Description:** Municipal
**Sewer Description:** Cesspool
**Included In Taxes:**
**Permit:**

**Included:** Alarm System, Attic Fan, Dehumidifier, Dishwasher, Dryer, Entertainment Cabinets, Fireplace Equip, Garage Door Opener, Garage Remote, Gas Grill, Hot Tub, Lawn Maint Equip, Light Fixtures, Mailbox, Microwave, Oven/Range, Refrigerator, Screens, Second Refrigerator, Shed, Video Cameras, Washer, Woodburning Stove
**Personal Property Exclusions:**
**Modification Exclusions:** None

**Waterfront Features:** **Water Frontage:**
**Building Features:**
**Green Features:**

## *Floor Plans*

| Level | Type | Description |
|---|---|---|
| 1 | Additional | Ef, Lr,Dr,Kitchen |

## *Additional Info*

**Also For Rent:** N **Auction Listing:** N **REO:** N
**Rental Income:** **Auction Terms Sale Listing:** N **Supersedes MLS#:**
**Tenant Pays:** **Contract Vendee Listing:** N

**List Date:** 9/13/2022 **Original LP:** $1,849,999 **Agreement Type:** Excl Right
**Exp Date:** 9/03/2023 **Prior LP:** **Seller Agency Comp:** 0
**List Price:** $1,849,999 **Buyer Agency Comp:** 2
**Owner Financing:** N **Broker Agency Comp:** 2

Prepared by: Theresa O Leary Douglas Elliman Real Estate (631) 543-9400
theresa.oleary@elliman.com (C) (631) 521-5530 10/26/2022 9:16 AM

Information supplied by third parties and not by OneKey® MLS
Information Copyright 2022. OneKey® MLS

*Offers of compensation are for OneKey® MLS Participants only.*

***Listing Office/Agent Info***

| | | | |
|---|---|---|---|
| BERKSHIRE HATHAWAY ( BHHS03) | 516-224-4600 | Nikko Hiotis | 516-725-1116 |

***Co-Listing Office/Agent Info***

| | | | |
|---|---|---|---|
| BERKSHIRE HATHAWAY ( BHHS03) | 516-224-4600 | Michael Pesce | 516-224-4600 |
| BERKSHIRE HATHAWAY ( BHHS03) | 516-224-4600 | Ronald Lanzillotta | 516-224-4600 |

**Occupancy:** OT **Owner:** Drag **Offers:** Cannot be Present
**Show Instr:** Call Nikko for all appointments 516-725-1116
**Status/Show#:** 516-725-1116
**Lockbox:** N **Neg Dir:** N **Access Showing:** BKR

Prepared by: Theresa O Leary Douglas Elliman Real Estate (631) 543-8400
theresa.oleary@elliman.com (C) (631) 521-3630 10/26/2022 9:18 AM
Information supplied by third parties and not by OneKey® MLS
Information Copyright 2022, OneKey® MLS

## CERTIFICATE

I hereby certify that I have placed a true and correct copy of the foregoing in the U.S. Mail with first class postage prepaid and properly addressed to the following on this 15th day of December, 2022:

Assistant U.S. Attorney
Burton T. Ryan, Jr., Esq.
610 Federal Plaza
Central Islip, NY 11722
Email: burton.ryan@usdoj.gov
PH: 631-715-7900

John Drago
293 Medea Way
Central Islip, New York 11722

CERTIFICATE

I hereby certify that I have placed a true and correct copy of the foregoing in the U.S. Mail with first class postage prepaid and properly addressed to the following on this 15th day of December, 2022:

Assistant U.S. Attorney
Burton T. Ryan, Jr., Esq.
610 Federal Plaza
Central Islip, NY 11722
Email: burton.ryan@usdoj.gov
PH: 631-715-7900

John Drago
293 Meden Way
Central Islip, New York 11722



Vicky Drago
293 Medea Way
Central Islip NY 11722

U.S. DISTRICT COURT
E.D.N.Y.
CLERK

USPS

The Honorable Gary R. Brown
United States District Court Judge
Eastern District of New York
100 Federal Plaza
Courtroom 940
Central Islip, NY 11722-9014

Hand deliver
to the